UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMOS NKONGOLO MUBANGA,<br><br>               Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.<br><br>               Defendant. | Case No.:  26-cv-02565-JO-AHG<br><br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

For the reasons stated on the record at oral argument on June 4, 2026 (Dkt. 16) and in *Faizi v. Larose*, No. 25-CV-02974-JO-MSB, --- F.Supp.3d ---, 2026 WL 1112035, at *3 (S.D. Cal. Apr. 24, 2026), the Court finds that (1) it has jurisdiction to address Petitioner's challenge to his prolonged immigration detention, and (2) Petitioner's immigration detention without a bond hearing has exceeded constitutional limits.

Given these findings, the Court now considers the appropriate remedy for Petitioner's unconstitutionally prolonged detention.  The traditional habeas remedy was limited to unconditional release from unlawful custody: "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional

function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Over the years, habeas law has evolved to permit intermediate relief short of outright release—such as ordering a bond hearing or a retrial—to give the government an opportunity to cure a constitutional deficiency. *See, e.g.*, *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("[F]ederal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court."). Contrary to the government's unsupported assertions,[1] however, these developments expand rather than constrain the Court's toolkit of potential habeas remedies; the Court is not barred from providing the traditional remedy of release simply because intermediate relief options exist. As the Ninth Circuit has explained, although a habeas court is no longer "required to order petitioner's immediate release from physical custody," it remains "free to fashion the remedy as law and justice require." *See Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) (internal quotation marks and citations omitted). Accordingly, the Court finds that it retains its full discretion to fashion equitable relief as appropriate and necessary. *See id.* ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus."); *see also Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) ("In shaping equity decrees, the trial court is vested with broad discretionary power . . . Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable."); *Brown v. Board of Education*, 349 U.S. 294, 300 (1955) ("Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs.").

While this Court has previously ordered bond hearings in prolonged detention

---

[1] The government cites a line of Ninth Circuit cases ordering a bond hearing as the remedy for prolonged immigration detention. *See* Dkt. 17 at 3–4. While a bond hearing is certainly a permissible remedy, none of the cited cases support the proposition that a bond hearing is the *sole* available remedy under the circumstances presented here. *See id.*

26-cv-02565-JO-AHG

cases,[2] it finds that recent developments in the immigration court system have rendered a bond hearing an inadequate remedy in this case.  Numerous courts in this circuit—including this one—have ruled that immigration judges in recent months failed to comply with habeas courts' orders to provide noncitizens with constitutionally adequate bond hearings.[3]  As one sister court observed, "[t]he mounting evidence that bond determination hearings conducted in Immigration Court . . . have preordained outcomes has become impossible to ignore." *Singh v. Valdez*, No. 26-CV-1109-WJM, 2026 WL 890240, at *5 (D. Colo. Apr. 1, 2026) (citation omitted).[4]  When faced with court orders to provide a new bond hearing, the government has, in many cases, conducted sham hearings that merely prolong unlawful detention,[5] rather than using the "opportunity to correct the constitutional violation found by the court." *See Hilton*, 481 U.S. at 775 (explaining that the purpose of procedural relief is to afford the state an opportunity to correct a constitutional violation).  As a result, successful habeas petitioners are suffering additional weeks or months of unlawful detention while pursuing further court orders to enforce a constitutional right that has already been adjudicated in their favor—*i.e.*, that they are entitled to a due process bond hearing to justify their detention.  In light of these circumstances, the Court finds that

---

[2] *See, e.g.*, *Faizi*, No. 25-CV-02974-JO-MSB, --- F.Supp.3d ---, 2026 WL 1112035.

[3] *See, e.g., Tiboko-Tifuh v. Noem*, No. 26-CV-1215-JO-DEB, 2026 WL 1603795 (S.D. Cal. June 4, 2026); *Lin v. Noem*, No. 3:26-cv-00807-JO-DEB, Dkt. 27 (S.D. Cal. Apr. 20, 2026); *Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479 (S.D. Cal. Apr. 16, 2026); *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, --- F.Supp.3d ---, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026); *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302 (C.D. Cal. Mar. 5, 2026); *Zaitsev v. Warden of Adelanto ICE Processing Center*, No. 2:26-CV-00454-SPG-AS, 2026 WL 391429, at *10 (C.D. Cal. Feb. 9, 2026); *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583 (W.D. Wash. Jan. 30, 2026).

[4] From 2013 to 2022, a noncitizen was more likely to be granted than denied bond, but this has changed radically in recent months. *See Immigration Bonds in the Second Trump Administration*, Boundless Immigration Blog (May 11, 2026), https://bklg.org/blog/immigration-bonds-in-second-trump-admin/#bond-grants-and-denials-by-immigration-judge.  In the first six months of the current presidential administration, the bond grant rate was similar to historical rates. *See id.*  However, the grant rate plummeted beginning in July 2025, and 2026 has seen the lowest grant rate on record, with immigration judges denying two-thirds of bond requests. *See id.*

[5] *See supra* note 3.

ordering a bond hearing would not sufficiently protect Petitioner's constitutional rights and orders his immediate release.[6]

## I.   CONCLUSION

For the reasons stated above, the Court GRANTS the habeas petitions and ORDERS as follows:

1. Respondents shall RELEASE Petitioner by 5 p.m. on July 7, 2026.  Respondents shall file an affidavit attesting to Petitioner's release by 5 p.m. on the following business day.

2. The Court ENJOINS Respondents from redetaining Petitioner during the pendency of his removal proceedings without first providing an individualized bond hearing before a neutral immigration judge where the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or such a flight risk that no amount of bond or alternative conditions of release "would suffice to ensure his future appearance." *Hernandez v. Sessions*, 872 F.3d 976, 983 (9th Cir. 2017); *see id.* at 990–91 n.18; *see also Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).  In setting the amount of bond, the immigration judge must consider Petitioner's financial circumstances and alternative conditions of release as set forth in *Hernandez*, 872 F.3d at 990–91.  The immigration judge shall not deny bond on the basis that (i) 8 U.S.C. § 1225(b) requires or authorizes mandatory detention; or (ii) BIA precedent deprives the immigration judge of jurisdiction to decide bond. If requested by Petitioner, Respondents shall produce a transcript or transcription of the recorded bond hearing.

---

[6] In doing so, the Court joins a growing number of courts nationwide that have declined to order a new bond hearing in similar cases "involving unlawful detention under § 1225(b) because . . . doing so would effectively allow the Government to transform an unlawful detention into a lawful one through post-hoc justifications." *See Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026) (ordering release of detainee who was unlawfully detained under § 1225 when he should have been subject to § 1226).

26-cv-02565-JO-AHG

3.   Respondents shall file a declaration attesting to full compliance with these obligations.  Respondents are ENJOINED from redetaining Petitioner **until 48 hours after** filing the declaration.

4.   The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED**.

Dated:  July 6, 2026

_____

Honorable Jinsook Ohta
United States District Judge

26-cv-02565-JO-AHG